HERMAN BECKER AND MINNIE De BAUN, INDIVIDUALLY AND AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF CARL BECKER, DECEASED, PROSECUTORS, v. MAYOR AND COUNCIL OF THE BOROUGH OF LITTLE FERRY, AND THE BOROUGH OF LITTLE FERRY, DEFENDANTS.

Argued May 7, 1940—Decided July 13, 1940.

Before Justices CASE, DONGES and HEHER.

For the prosecutors, *Milton T. Lasher.*

For the defendants, *John A. Christie* and *Winne & Banta.*

The opinion of the court was delivered by

CASE, J.   The writ brings up a tax sale certificate and the proceedings on which the tax sale certificate was based. Prosecutors are the successors in interest to Carl Becker, now deceased, who was the owner of the real estate. A proceeding in Chancery to foreclose the right of redemption was interrupted to permit this proceeding. The contention of the

prosecutors is that the tax sale proceedings do not properly constitute a lien against the fee.

The certificate of tax sale is dated December 26th, 1931, and certifies the sale to the borough of Little Ferry of lands described as Block 1, Lot 5 on the borough tax duplicate "assessed thereon to Herman Walker Realty Co. as owner for the year 1930," for $1,335.97, made up of 1930 taxes $1,204.20, interest $125.77 and costs $6. The sale had previously been duly advertised as a sale of that real estate, so assessed and for that tax and accumulated interest.

Clearly the advertisement, sale and certificate were, on the face of the proceedings, regular. The writ is prosecuted upon the proposition that the facts, properly stated, do not sustain the proceedings. Carl Becker owned the land, which, in 1921 and for a time thereafter, was without improvements. On April 15th, 1921, he leased the lands by a duly recorded writing to Charles Dietrichs for a term of three years from May 1st, 1921, to May 1st, 1924, at a stipulated yearly rental, with an option to Dietrichs to renew for three years or more at a named increase in rental and with the privilege in Dietrichs "to remove all buildings erected by him when vacating the said premises." Dietrichs, on April 30th, 1923, by duly recorded writing, and without meanwhile having erected any buildings, assigned to Herman Walker Realty Company which occupied the premises as tenant for some years and then went into receivership. That corporation, during its tenancy, constructed buildings of sizable proportions, substantially integrated with the ground. On August 30th, 1927, Walker Cement Products, Inc., was incorporated, entered upon the premises as tenant and acquired whatever interest the Herman Walker Realty Company then had under the assignment of lease from Dietrichs, including the Realty Company's interest in the buildings. In the summer of 1937, Walker Cement Products, Inc., passed into receivership, whereupon a new corporation, Walker Cement Products Corporation, was formed and entered into possession of the premises. We find no proofs upon which to base a finding that the last named corporation became entitled to the assets or burdened with the liabilities of any of the predecessor tenants.

From 1928 to 1939, inclusive, the period covered by the records before us, the assessments were segregated as between land and improvements; the land assessments were laid against Becker and the improvements, meaning the buildings, were assessed throughout the entire period against Herman Walker Realty Company, as was also the personal property. Thus in 1930 the land was assessed against Becker, and the improvements, as well as personal property, were assessed against Herman Walker Realty Company, although that company was not and had not for some years been the tenant and, so far as the proofs indicate, was not in existence. The tax sale was for the unpaid 1930 tax levied against improvements and personal property. The levy upon lands was for that year, and has been for each year, paid. The levies against improvements and personal property have, in part, accumulated. But we are unable to say what part of the accumulated tax debt represents the levy on improvements or what part the levy on personal property, for which, by no process of reasoning, the land may be held liable. The 1930 assessments were $2,500 on land, tax calculated at $167.25 against Becker and paid; $10,500 on improvements, $7,500 on personal property, tax calculated at $1,204.20 against Herman Walker Realty Company. The tax rate is not disclosed. But it was that tax of $1,204.20, representing the assessments against improvements and personalty, for which the tax sale of the "lands" was had; and the additions each year on the tax collector's books to the redemptive requirements under the tax sale certificate are the result of the same confused mingling of improvements tax and personal property tax. There was no right in the borough to impose a tenant's unpaid personalty tax as a lien upon the real estate. This applies to the original tax sale and to the additions for unpaid subsequent taxes. There are no figures before us by which we may disentangle the calculations and pronounce a correct result.

We find that the buildings were so integrated with the land as to constitute, from the standpoint of the taxing authority, a part of the realty. A municipality may not be left in so precarious a position with regard to its tax collections as is involved with the unraveling of the snarled relations between

the landowner and the succession of tenants in the instant case, with recorded and unrecorded leases, options, provisional permits, assignments of interest, succession of interest without assignment, a series of receiverships, and the like. It is clear to us that the assessor purposely named and intended to continue naming the tenant as the tax debtor with respect to the buildings and other improvements, and it is quite within the law for a landlord and a tenant, by their contract or by their dealings, to effect such a division of tax liability as between themselves and to cause buildings to take on the aspect of chattels real or even of mere chattels as between themselves or among those who take in their right; but the government's right to collect tax levies may not be thwarted or complicated by a theoretical division of that which has long been regarded by our jurisprudence as realty into subdivisions with ill defined limits and vague attributes. By way of illustration we note our inability, upon the proofs before us, to determine, even as between the parties, whether the buildings were, at the time of the laying of the 1930 assessments, the potential property of the tenant or had become unconditionally the property of the owner of the fee. Failure to include all of the owners within the assessment, or even the laying of an assessment against one who is not the owner, does not invalidate a tax levy. The mistaken course of the assessor does not deprive the municipality of the right to enforce its tax lien against real estate.

Unless the parties can agree between themselves upon the proper apportionment of the taxes year by year levied against improvements and personalty the tax sale certificate and the tax sale proceeding out of which the certificate issued will be set aside to the end that the proceedings start anew with a charge against the lands of the taxes assessed against improvements but not of the taxes levied against personalty; but if the parties do so agree, the tax lien may be modified accordingly and the writ dismissed. But in either event we think that costs should go to the prosecutors.