185 N.J. Super. 248 (1982)
448 A.2d 475
LAKE END CORPORATION, PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF ROCKAWAY, DEFENDANT-APPELLANT, AND GREEN POND CORPORATION AND GREEN POND MOUNTAIN CORPORATION, PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF ROCKAWAY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 1982.
Decided June 14, 1982.
*249 Before Judges ALLCORN, FRANCIS and MORTON I. GREENBERG.
Robert Goldsmith argued the cause for appellant (Wiley, Malehorn & Sirota, attorneys; Fredrick J. Sirota of counsel and Robert Goldsmith on the brief).
Gary C. Algeier argued the cause for all respondents (Schenck, Price, Smith & King, attorneys; Douglas S. Brierley on the brief).
The opinion of the court was delivered by FRANCIS, J.A.D.
This matter involves appeals by the Township of Rockaway from two judgments of the Tax Court. The same single issue is addressed in both appeals and we have therefore consolidated them on our own motion. In each instance Rockaway challenges the determination of the Tax Court as to the approach utilized by that court in evaluating a portion of each of the two taxpayers' acreage for property tax assessment purposes. Both tracts are situate in Morris County and generally surround Green Pond Lake in Rockaway Township. Lake End Corporation, one of the taxpayers, owns approximately 338 acres at the southerly end of the lake. Green Pond Corporation owns approximately 890 acres located on the northerly end of the lake. The holdings of these two taxpayers are generally contiguous in the vicinity of the lake. Some basic factual background as to each of the tracts, their acquisition and the manner in which certain leaseholds came about is appropriate.

Lake End Corporation
The property owned by Lake End Corporation consists of 338 acres situate on the southwesterly end of Green Pond Lake. *250 The property is approximately three miles south of State Highway 23 and approximately ten miles north of Interstate Highway 80. The property consists of a large tract of woodland. The focal point of the property is Green Pond Lake, a natural lake approximately 2.5 miles long, encompassing slightly more than 500 acres. The lake is spring fed and is characterized by the township as being in excellent condition. Approximately one-fourth of Green Pond Lake, 125 acres, is owned by Lake End Corporation. The remainder of the property surrounding Green Pond Lake is owned by Green Pond Corporation, a lake community similar to Lake End and described hereafter.
Numerous residences have been constructed on the property, some of which appear to be substantial. The property is served by a private road, electric service and telephone service and police and fire protection. Water is provided by private wells and sewage is treated by on-site septic systems.
Lake End Corporation was established in 1924 to purchase the entire 338 acres. Its shareholders were the individuals who were then leasing parcels of property from the previous owners. After the corporation purchased the property, the corporation leased a designated lot to each of its shareholders for a period of 99 years. This relationship continues to the present. The owners of the 99-year leaseholds are the sole shareholders of the corporation.
Lake End Corporation property consists of three major segments:
(1) The developed residential area, consisting of approximately 63-64 acres;
(2) 105 acres leased to the United States Government and an additional 45 acres which separate the government-leased property and the residential lots, and
(3) 125 acres located under Green Pond Lake.
There is no dispute as to the improvements on the developed residential area. These have always been assessed to the leaseholders. The dispute concerns the land on which the improvements have been built, which is assessed separately to each of the respective corporations.

*251 Green Pond Corporation

and

Green Pond Mountain Corporation
Green Pond,[1] the other taxpayer, owns approximately 890 acres located on the northerly end of Green Pond Lake. This acreage has been acquired in fragments through the years. Roughly three-fourths of the lake itself is owned by Green Pond. Of the remaining property owned by Green Pond, approximately 50 acres are occupied by some 255 homesites and it is this area or tract that is in dispute. As in Lake End, many of the residences constructed on these homesites are substantial. Another 20 acres in the "village area" contain such amenities as a recreational hall, tennis courts, Green Pond Yacht Club, beach and swimming areas, dock areas, a recreation field, a ball field and the Green Pond Store.
Again, as in Lake End, the property is served by electric and telephone service and has police and fire protection. Water is provided by private wells and sewage is treated by on-site septic systems. It is served by paved roads. A number of roads maintained by the township traverse the corporation's area in the vicinity of the homesites. Other interior roads are owned and maintained by Green Pond.
Green Pond has similar origins to that of Lake End. Originally some campers negotiated long-term leases with the owners of the property in the northern section of the lake and constructed summer cottages. Thereafter, in 1921 they formed a corporation, Green Pond Corporation, which leased the land from the then owners and in turn leased it back to the shareholders of the corporation. In addition, another corporation, Green Pond Mountain Corporation, purchased the lands in 1970. Green Pond Mountain Corporation and Green Pond Corporation, while separate entities, both share the same directors and staff. Green *252 Pond Mountain Corporation has leased the purchased land back to Green Pond Corporation, which in turn has leased the property to its individual shareholders for 99 years in much the same fashion as Lake End. Some shareholders in the Green Pond Corporation hold a fee interest in property adjacent to that owned by Green Pond Mountain Corporation. These latter holdings are not involved herein.
The issue before us involves only the 64-acre residential portion of the Lake End tract and the 50-acre residential portion of the Green Pond tract. The former tract contains 83 residential plots along the southerly portion of the lake and on a peninsula which juts into the lake. There are 65 leaseholds covering 70 of the 83 plots; the remaining 13 of them are entitled in Lake End. All of these plots are shown on a map referred to as the "Boomer" map on file in the corporate offices. The Green Pond tract contains 255 homesites, also delineated on maps held by the corporation.
The exact nature of the question presented as to these two residential tracts is best articulated in the contentions presented by each of the parties and the conclusion reached by the Tax Court.
The township contends that each of the tracts has been, in effect, subdivided by the creation of the individual 99-year leaseholds and the use actually put to the individual leasehold plots. Accordingly, it is contended, each of the plots should be assessed individually rather than as part of the acreage making up the whole tract.
Lake End and Green Pond maintain that the tracts in question are part and parcel of the total acreage and should, therefore, be combined with the remaining acreage and assessed as one single large tract.
The Tax Court in its approach, declined to employ the technique advanced by the township. The judge's comment in the *253 Lake End decision is explanatory of his reasoning as applicable to both tracts:
Viewed in this posture I conclude that, at least with respect to the homesite section of the tract, the technique employed by township's witness is unacceptable. It represents the jigsaw puzzle technique referred to by the court in City of Newark v. West Milford Township [9 N.J. 295].
The court did determine, however, that some of the acreage within each tract was more valuable than other acreage and assigned varying values to the differing tracts. In Lake End the judge assigned a value of $2,000 an acre to the 69-acre residential area and the 124-acre lake area owned by the corporation. He assigned lesser values to the acreage leased to the Federal Government and the 45 acres abutting that leasehold. His approach in Green Pond was essentially the same.
We are of the opinion that the position taken by the township is the correct one. Our State Constitution requires that property "shall be assessed for taxation under general laws and by uniform rules." N.J.Const. (1947), Art. VIII, § 1, par. 1. The relevant implementing statutes are N.J.S.A. 54:4-1 et seq. N.J.S.A. 54:4-1 is inclusionary to promote uniformity and equality. It provides, in relevant part:
All property real and personal within the jurisdiction of this State not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter. Such property shall be valued and assessed at the taxable value prescribed by law.
N.J.S.A. 54:4-23 provides:
All real property shall be assessed to the person owning the same on October 1 in each year. The assessor shall ascertain the names of the owners of all real property situate in his taxing district, and after examination and inquiry, determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 next preceding the date on which the assessor shall complete his assessments....
The mandate of the Constitution of 1947, as implemented by the statutes, is equality in the distribution of the burden of government among the owners of taxable real property. Switz v. Kingsley, 37 N.J. 566, 571 (1962). All taxable property is to bear its full, equal and just shares of taxes. Ridgefield Park v. *254 Bergen Cty. Bd. of Tax., 62 N.J. Super. 133, 141 (Law Div. 1960), rev'd on other grounds 33 N.J. 262 (1960). Thus, all property must be assessed at its true value. "True value is the consideration of the market value of the property at a fair and bona fide sale at private contract." Newark v. West Milford Tp., 9 N.J. 295, 303 (1952); Passaic v. Gera Mills, 55 N.J. Super. 73, 83 (App.Div. 1959).
All factors bearing upon the question of true value are to be considered in the assessment. Rek Investment Co. v. Newark, 80 N.J. Super. 552, 559 (App.Div. 1963).
As a general proposition, all of the natural attributes of a parcel of real estate may properly be given consideration in arriving at its true value for tax purposes, the presumption being that the willing buyer and the willing seller in a hypothetical sale would themselves have all such attributes in mind in coming to a conclusion as to what their bargaining position should be and what price they should pay or accept in arriving at a fair sale. [In re East Orange Appeal, 80 N.J. Super. 219, 231 (App.Div. 1963), certif. den. 41 N.J. 200 (1963)]
The relevant standard for ascertaining the value of a large tract as established by the Supreme Court in Newark has already been noted. Newark was expanded upon and further defined by the Appellate Division in East Orange, supra, 80 N.J. Super. 219. As in Newark, East Orange involved the tax valuation of a large tract of municipally owned watershed land. However, both cases are applicable to valuation questions regarding any large property tract. See Clifton v. North Jersey Dist. Water Supp. Comm'n, 104 N.J. Super. 147, 152 (App.Div. 1969).
In applying the constitutional and statutory mandates to the assessments in dispute, the Tax Court sought to avoid what it considered to be a "jigsaw puzzle problem" mentioned in Newark, therefore considering the acreage held in the individual leaseholds as incapable of further subdivision for the purpose of assessment valuation. It further relied on the proposition that lands must be valued in the exact condition as the owner holds them.
*255 We are of the opinion that the trial court misconstrued Newark. There was no "jigsaw puzzle technique" employed by the assessor in that case. There, in discounting the necessity for such exactitude as would befit the matching of the parts of a "jigsaw" in matching the component parts of a larger tract with other comparable parcels for assessment purposes, the court stated:
[T]he true value of these watershed lands can only be reasonably approximated and will have to be determined by comparison of the representative component parts of the various classifications of the lands, which in the aggregate make the total of the 18,548 acres, with the true value of comparable parcels of land owned by private persons adjacent to the watershed or reasonably nearby in the township, measured by the standard of value established by a fair and bona fide sale at private contract.
Such lands need not match exactly as do the parts of a jig-saw puzzle, nor is it necessary to compare for value each and every square rod or acre in this vast tract. The value of the aggregate of these lands may be established by a comparison of a representative number of comparable parcels owned by private persons to an equally representative and comparable number of tracts or parcels in the various classifications of the lands making up the watershed, to the extent that the sum total of such values established will represent such a percentage of the total that the value of the lands of the entire watershed may be reasonably approximated therefrom. [9 N.J. at 308]
Newark was interpreted by this court in In re East Orange Appeal, supra, 80 N.J. Super. at 231.
We understand Newark v. West Milford as meaning that the tax valuation of a large tract of municipally-owned watershed land is not to be arrived at on the basis of what it would sell for in the entirety, in a single sale, to a single hypothetical purchaser, but rather what appropriate marketable segments thereof, analogous to private holdings of similar lands by others in the community, would sell for in the aggregate if sold separately by fair sale under private contract. [80 N.J. Super. at 229]
The assessment technique described in Newark and East Orange is applicable here. The individual leaseholds themselves are the "marketable segments" mentioned in Newark. In fact, the preciseness or exactness, the need for which was found unnecessary in Newark, is actually present. The bounds of each of the leaseholds are clearly set forth on maps in the possession of the corporate owners, and when the leaseholds are described in conveyances the description utilizes a lot number as set forth on the corporate map. The individual leaseholds are used by the *256 tenants as residential properties. In this case there is no necessity to evaluate a potential for subdivision, as contended for by the taxing authority in Newark. Here the subdivision has actually occurred. As mentioned, the leaseholds are served by private roads, electrical and telephone service and municipal police and fire protection. Water and sewage treatment are both available, although provided by the tenants. The "marketable segment" approach used in Newark and East Orange was necessary because of the little likelihood that those properties could be sold as a single tract. The acreage involved in both cases was vast. Here the lands are privately owned and the acreage is relatively much smaller. The unlikelihood of the sale of the entire tract as a single parcel, however, is just as apparent here as it was in Newark and East Orange, although for a different reason. It is inconceivable that the tenants in the present case, as shareholders in the owning corporation, would ever consent to a sale by the corporation of the entire tract which would include the property they hold in individual tenancies. To do so might well jeopardize the nature and even the continuation in a practical sense of their tenancies. The "marketable segment" approach is therefore just as necessary here as it was in Newark and East Orange. The individual leaseholds, however, must be considered as separate marketable segments.
In addition to the fact that the leaseholds are marketable segments and therefore furnish an appropriate basis for assessment, there is another basis for assessing the leaseholds as separate lots. As a matter of law and fact, 99-year leaseholds are the equivalent of a fee ownership for the purposes of real property taxation, valuation and assessment.
A long-term lease conveys an ownership equivalent to a fee simple. Ocean Grove Camp Meeting v. Reeves, 79 N.J.L. 334 (Sup.Ct. 1910), aff'd 80 N.J.L. 464 (E. & A. 1910). As stated in Ocean Grove, "It is quite plain that an instrument demising to one and his heirs and assigns a long term of years in land, *257 renewable in perpetuity conveys an ownership equivalent to a fee simple, although rent may be thereby reserved." Id., 79 N.J.L. at 338-339. The facts in the cases here are quite similar to those of Ocean Grove. While a distinction might be drawn based on the perpetual renewability of the Ocean Grove leases, in practical terms the subject leases are perpetual. All expire at the same time and the renewal decision is really in the hands of the lessees. Such an arrangement bespeaks of the necessary permanence or perpetuity of the property interest held by the lessees. The record indicates that some of these leaseholds have been the subject of conveyances and mortgages in much the same manner as in the alienation of a fee simple.
The equivalency of the leasehold interests herein to a fee interest is pointed up by comparison to the language in our Homestead Rebate Act, N.J.S.A. 54:4-3.80. That legislation requires a proprietary interest which is satisfied only by "legal or beneficial ownership; a tenancy for life or for 99 years or more." MacMillin v. Taxation Div. Director, 180 N.J. Super. 175, 179 (App.Div. 1981) (emphasis supplied). The leaseholds could properly be assessed to the tenants rather than the owners. While such an assessment by the township might be more convenient, it is not required. The courts have acted to insure that full real property taxes are paid regardless of ownership and to facilitate the collection of such taxes regardless of ownership. See Koester v. Hunterdon Cty. Bd. of Tax., 79 N.J. 381, 393 (1979); Becker v. Little Ferry, 125 N.J.L. 141 (Sup.Ct. 1940), aff'd 126 N.J.L. 338 (E. & A. 1941). "[T]he municipality in assessing land is not obliged to cast around to see who has a leasehold interest therein," 126 N.J.L. at 340 nor is it precluded from doing so. Koester, supra, 79 N.J. at 393.
We hold, therefore, that the individual leaseholds may be assessed as individual parcels of real property.
While we recognize the power of this court under Art. VI § V, par. 3 of the Constitution of 1947 and R. 2:10-2 to exercise original jurisdiction to fix the assessment in question for the *258 taxable years, this is a power which should not be exercised in the absence of imperative necessity which does not exist here. Newark, supra, 9 N.J. at 301. We therefore decline to do so. The judgment of the Tax Court is reversed insofar as it applies to the leasehold interests which are the subject of this appeal and the cause is remanded to the Tax Court for reassessment in conformity herewith.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] Green Pond Corporation and Green Pond Mountain Corporation (both hereafter Green Pond).