HAMILL, J.T.C.
In these local property tax appeals for the 1993 and 1994 tax years, the United States Postal Service moved for summary judgment on the ground that Freehold Township could not include the value of a post office building in the assessments because the building is owned by the Postal Service. According to the Postal Service, the tax, as applied, infringes on the federal government’s immunity from state and local taxation.
The property at issue is designated as Block 86, Lot 12 on the local tax map and was assessed for the 1993 and 1994 tax years at $7,900,000, of which $4,898,800 was allocated to improvements. The Postal Service takes the position that the assessment must be reduced by $1,429,000 to eliminate the assessment on the federally owned post office building.
According to the complaint, in 1988 the Postal Service entered into a long terra ground lease with plaintiff Raintree Associates. Raintree Associates subsequently conveyed the property to plaintiff Rainhold Holding Company, reserving to itself the ground lease to the Postal Service. The property subject to the lease includes certain land and “any improvements” located on the land for the purpose of operating a post office. The lease is for a term of 50 years, at the conclusion of which the Postal Service has an option to purchase the leased property at a price equal to the value of the land only. The property reverts to the landlord if the Postal Service does not exercise the option.
Additionally, the lease obligates the Postal Service to construct a post office building and to obtain property and liability insurance naming the landlord as an additional insured. In the event of a casualty to the building or the property, the lease provides that there shall be no abatement in the rent except that if a casualty occurs during the last two years of the term, the Postal Service need not rebuild. If this occurs, the lease terminates and all insurance proceeds are payable to the landlord. In the case of condemnation, any lump sum award is to be allocated according to the landlord and Postal Service’s respective interests “ie., ... the *256 appraised value of the Landlord’s nonsubordinated fee interest and the Tenant’s leasehold interest____”
The lease further provides that in the event of a default, e.g., nonpayment of rent, the landlord has the option of terminating the lease, removing the Postal Service, taking possession of the property, and reletting it. The Postal Service agrees that, to the extent necessary, a mortgage lender may modify the lease so long as the modifications do not affect its “leasehold interest____” The lease is a net lease with the Postal Service paying its proportionate share of local property taxes assuming that the leased property is not exempt.
Initially, it is plain that the Postal Service is an agency of the federal government and thus entitled to claim the federal government’s immunity from state and local taxation. The Postal Service is “an independent establishment of the executive branch of the Government of the United States____” 39 U.S.C.A. § 201. See Jurzec v. American Motors Corp., 856 F.2d 1116 (8th Cir. 1988), holding that the Postal Service could claim the discretionary function exception to the federal government’s waiver of sovereign immunity in the Federal Tort Claims Act.
It is equally plain that this court has jurisdiction despite the involvement of an agency of the United States. Under 39 U.S.C.A. § 409(a) the federal district courts have “original but not exclusive jurisdiction over all actions by or against the Postal Service.”
Finally, it is clear that .the Postal Service has standing, despite its status as a tenant, to prosecute this appeal. The complaints are filed in the names of the property owner, Rainhold Holding Company, the ground lessor, Raintree Associates, and the Postal Service as tenant of the building whose assessment is in dispute. In Village Supermarkets, Inc. v. West Orange Tp., 106 N.J. 628, 525 A.2d 323 (1987), our Supreme Court held that, depending upon the circumstances, a tenant may have standing to pursue a local property tax appeal in the name of the owner. The circumstances detailed by the Court, id. at 634-35, permit the *257 Postal Service to maintain this appeal. The lease is a net lease, which is to run for 50 years; the assessment on the post office building is approximately 18% of the total assessment on Block 86, Lot 12; the Postal Service will adequately represent the landlord’s interest because a successful appeal will result in a substantial reduction in the assessment; and the Postal Service has the ability to effectively prosecute the appeal, particularly as it relates to the Service’s alleged tax immunity. Finally, there is no indication that either the ground lessor or owner, both of whom are named in the complaints, objects to the Postal Service’s prosecution of the appeal.
Prior to 1944, N.J.S.A. 54:4-3.3 provided an exemption for the real and personal property of the United States. The provision was repealed by L. 1944, c. 24. The sponsor’s statement to the repealer bill explains that, “As there is now legislation in Congress permitting taxation of the property of the United States, the purpose of this act is to eliminate the exception [sic] of property owned by the United States for taxation purposes.” Since state law contains no exemption for the federal government, any such exemption must be found in federal law, specifically in the doctrine of federal government immunity from state taxation.
The origin of the federal government’s tax immunity is found in McCulloch v. Maryland, 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819), in which Chief Justice Marshall held that under the Supremacy Clause the State of Maryland could not tax notes issued by the Bank of the United States. The Supreme Court’s modem view of the immunity doctrine is set forth in United States v. New Mexico, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982). The issue in the case was whether New Mexico’s gross receipts and compensating use tax could be applied to receipts received by independent contractors for services performed in constructing, managing, and maintaining facilities of the Atomic Energy Commission. Under the pertinent management contracts, title to all tangible property passed directly to the government, and the contractors paid their creditors and employees by drawing on bank accounts funded by the federal government. The con *258 tractors conceded liability for gross receipts tax on the’ fees received from the government but maintained that New Mexico could not tax the funds included in the bank accounts, nor the receipts of vendors selling tangible' property to the United States through the contractors, nor the use of government-owned property by the contractors. United States v. New Mexico, supra, 455 U.S. at 728, 102 S.Ct. at 1379.
Reviewing the history of the immunity doctrine, Justice Black-mun pointed out that, “[Ijmmunity may not be conferred simply because the tax has an effect on the United States, or even because the Federal Government shoulders the entire economic burden of the levy.” Id. at 734, 102 S.Ct. at 1382. Nor is immunity conferred “simply because the state tax falls on the earnings of a contractor providing services to the Government.” Ibid. In the case of a use tax, immunity is not conferred when a private entity uses government property provided the private party’s use is for its own separate, profit making purpose. Id. at 734-35, 102 S.Ct. at 1382-83. Nor is immunity conferred because a tax is paid with government funds. Id. at 735,102 S.Ct. at 1383. The federal government’s tax immunity “is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned.” Ibid. A levy falls on the United States only when the legal incidence of a tax is on the federal government. Id. at 735 n. 11, 742, 102 S.Ct. at 1383 n. 11, 1387; United States v. County of Fresno, 429 U.S. 452, 460, 97 S.Ct. 699, 703-04, 50 L.Ed.2d 683 (1977). In the case of a private contractor, the taxpayer “must actually ‘stand in the Government’s shoes.’” United States v. New Mexico, 455 U.S. at 736, 102 S.Ct. at 1383 (quoting City of Detroit v. Murray Corp., 355 U.S. 489, 495, 503, 78 S.Ct. 458, 461-62, 462, 2 L.Ed.2d 44 (1958) (concurring and dissenting opinion of Frankfurter, J.)).
Applying the immunity doctrine to the facts before it, the Court in United States v. New Mexico concluded that, as the legal incidence of New Mexico’s gross receipts and use taxes fell on the *259 contractors rather than on the United States, and since the contractors were privately owned corporations that were not constituent parts of the federal government, the use tax could be applied to the contractors and the gross receipts tax could be applied to funds received by the contractors to meet salaries and other costs. 455 U.S. at 740-41, 102 S.Ct. at 1385-86. As to the use tax, the contractors had an interest in government owned property to the extent that the property was used to further “the contractor’s essentially independent commercial enterprise.” Id at 742, 102 S.Ct. at 1387. Even where the gross receipts tax was applied to property purchased by the contractors for the government with title passing directly to the government, the tax did not infringe on the government’s tax immunity. The Court found that the contractors were separately liable to the vendors for the purchase price and could act with a certain independence in procuring property. Since the contractors were “sufficiently distinct from the Government,” id at 743, 102 S.Ct. at 1387, the transactions were not in fact purchases by the United States.
In determining whether the legal incidence of a state tax falls on the United States, the primary consideration is whether state law requires the tax “to be charged to and collected from the United States.” United States v. County of Fresno, supra, 429 U.S. at 459 n. 7, 97 S.Ct. at 703 n. 7 (citations omitted). Thus in United States v. Mississippi Tax Comm’n, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed2d 404 (1975), the Court invalidated a state liquor tax imposed on a wholesaler’s markup where the liquor in question was sold to a federal military base. Although the statute made the wholesaler legally liable for the tax, it required that the tax be charged to and collected from the purchaser. Thus the legal incidence of the tax fell on the federal government. Id. at 607-09, 95 S.Ct. at 1877-78. Similarly, where state law required that a sales tax be collected from the purchaser, the legal incidence of the tax was on the purchaser even though the seller was responsible for paying the tax. First Agrie. Nat’l Bank v. Tax Comm’n, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968). Only when state law requires that the tax be passed through to one not *260 legally obliged to pay it, e.g., in the case of a sales tax, does the legal incidence fall on a person other than the named taxpayer. This is not the ease where the economic burden of a tax is passed through by operation of the market, e.g., in the case of a gross receipts tax charged to and collected from a seller or distributor. See Peckron, Standards for Determining the Legal Incidence of State Taxes, 29 Tax Law. 372 (1976); compare on the one hand, United States v. Maryland, 471 F.Supp. 1030, 1037-38 (D.Md. 1979) (legal incidence of environmental surcharge measured by kilowatt hours generated was on electric utilities, not federal government, where statute authorized but did not require surcharge to be passed through to customers) and United States v. City of Leavenworth, Kan., 443 F.Supp. 274, 281-83 (D.Kan.1977) (legal incidence of public utility gross receipts tax was on electric utilities, not federal government, where taxing statute did not require tax to be passed through to customers although state corporation commission required a pass through) with United States v. Delaware, 958 F.2d 555, 562 (3rd Cir.1992) (legal incidence of public utility gross receipts tax was on federal government, not electric utilities, where taxing statute required tax to be passed through to customers even though statute also provided that tax was on distributor and was not to be construed as a tax on customer).
A departure from the rule arises when the legal incidence of a tax falls on a private party using federal property but that party has no separate beneficial interest in the property that falls within the reach of the particular tax. In that case the tax may infringe on the government’s immunity. See United States v. County of Fresno, supra, 429 U.S. at 465-66 & nn. 14-15, 97 S.Ct. at 706-07 & nn. 14-15. Thus, for instance, in United States v. Hawkins County, Tenn., 859 F.2d 20 (6th Cir.1988), cert. denied, 490 U.S. 1005, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989), the court struck down a state property tax assessed against the user of property as applied to a government contractor operating a government munitions facility. The court conceded that a state may impose a tax on a private party’s beneficial use of government *261 property but concluded that the tax at issue was not in fact a tax on beneficial use but rather an ad valorem property tax. Since (1) the tax was laid on property, (2) the federal government owned the property, and (3) the contractor had no property interest but only a right to use the government’s property, the tax was imposed on the government. Accordingly, the tax was invalid. Similar results were reached in United States v. Nye County Nev., 938 F.2d 1040 (9th Cir.1991), cert. denied, 503 U.S. 919, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992) and United States v. Colorado, 627 F.2d 217 (10th Cir.1980), aff'd without opinion sub nom. Jefferson County, Colo. v. United States, 450 U.S. 901, 101 S.Ct. 1335, 67 L.Ed.2d 325 (1981).[1] Cf. United States v. County of San Diego, 965 F.2d 691 (9th Cir.1992) (distinguishing Hawkins, Nye County, Nev., and Colorado on the ground that the state statutes at issue in those cases were property taxes that did not extend to possessory uses, while the California property tax at issue reached possessory uses of the kind held by a government contractor in federally owned property).
I turn now to the legal incidence of the local property tax.
N.J.S.A 54:4-1 provides in pertinent part that, “All property real and personal ... shall be subject to taxation annually----” N.J.SA 54:4-23 provides that, “All real property shall be assessed to the person owning the same on October 1 in each year. The assessor shall ... determine the full and fair value of each parcel of real property situated in the taxing district----” The assessment required by N.J.SA 54:4-23 is not based on an owner’s title but rather on the value of all interests in the land. *262 In re Appeal of Neptune Tp., 86 N.J.Super. 492, 499, 207 A.2d 330 (1965). The assessment is against the real property itself, including both land and improvements. Koester v. Hunterdon County Bd. of Taxation, 79 N.J. 381, 392, 399 A.2d 656 (1979); Freehold Office Park Ltd. v. Freehold Tp., 12 N.J.Tax 433, 440 (Tax 1992). Moreover, the tax “is a lien on the entire fee even where there is separate ownership of the land and improvement.” Koester, supra, 79 N.J. at 392, 399 A.2d 656. As a result, even when a lessee can be said to own a building constructed by him on leased land, the lien for the tax is a lien against the landowner’s fee. Crewe Corp. v. Feiler, 28 N.J. 316, 320, 146 A.2d 458 (1958); Becker v. Little Ferry, 126 N.J.L. 338, 19 A.2d 657 (E. & A.1941).
With limited exceptions not pertinent here, the local property tax is charged to and collected from the owner of the property. The property is assessed to the owner, N.J.S.A 54:4-23, and, absent instructions to the contrary, tax bills are sent to the owner. N.J.S.A. 54:4-64.[2] Limited statutory exceptions provide for assessing a lessee’s interest when exempt property is leased to a person whose property is not exempt, e.g., a lease of federally owned property to a commercial tenant. N.J.S.A 54:4-2.3. In such event, the tax lien is against the leasehold estate, and the lessee is personally liable for the tax. N.J.S.A 54:4-2.8. A similar provision exists for exempt property when the property is used by a private party in connection with an activity conducted for profit. N.J.S.A. 54:4-1.10.[3] Neither of these exceptions applies here, and with those limited exceptions, there is no statutory *263 provision permitting the local property tax to be charged to and collected from a tenant.
Under limited factual circumstances not present here, New Jersey courts have held that leasehold estates may be separately assessed, for instance, when they have the “permanence or perpetuity” of a fee interest. Lake End Corp. v. Rockaway Tp., 185 N.J.Super. 248, 257, 448 A.2d 475 (App.Div.1982). Thus, in the cited case the court held that 99-year leasehold estates constituting residential lots in two lake communities could be assessed as separate parcels. The tenants were shareholders in the corporations that owned the tracts of land on which the lots were located. The court reasoned that the leases were in substance perpetually renewable because the tenant/shareholders would never consent to sales of the entire tracts as a sale would jeopardize the continuation of their leases. Id. at 256, 448 A.2d 475. Similarly, in Koester v. Hunterdon County Bd. of Taxation, supra, our Supreme Court held that a taxing district could send separate tax bills to the owners of mobile homes located on leased land. Koester, supra, 79 N.J. at 393, 399 A.2d 656. The Court was careful to point out that such a practice would not waive “the municipality’s lien on the land and its improvements for the total assessed value of the parcel.” Ibid. In so ruling, the Court cited Becker v. Little Ferry, 125 N.J.L. 141, 14 A.2d 493 (Sup.Ct.1940), aff'd 126 N.J.L. 338, 19 A.2d 657 (E. & A.1941), for the proposition that, even though a tenant may receive assessments with respect to his interest, the landowner remains “liable for the tax on the entire parcel including the building____” Koester, supra, 79 N.J. at 393, 399 A.2d 656. Thus, in Becker the court sustained the sale of a tax sale certificate relating to both land and improvements although the assessor had separately assessed the tenants for the improvements and the tax delinquency related exclusively to the taxes assessed against the improvements. In the words of the Court of Errors and Appeals, “Cases holding that the lessee may be taxed by reason of his interest in real estate do not relieve the owner of his obligation.” Becker, supra, 125 N.J.L. at 340, 14 A.2d 493.
*264 The legal incidence of the local property tax is thus on the property itself. The tax is the legal obligation of the owner of the fee, and that interest is subject to the municipality’s lien for taxes. With limited statutory and judicial exceptions, none of which are applicable here, the tax is charged to and collected from the legal owner of the fee. To the extent that ease law sanctions the assessment of a tenant’s interest, the decisions take care to point out that such assessments do not relieve the landowner of liability for taxes on the entire parcel.
The Postal Service has a 50-year nonrenewable lease with an option to buy the property at the end of the term for the value of the land. As these interests do not include all the interests in the property, they do not amount to ownership of the fee. Lidell v. Mimosa Lakes Ass’n, 6 N.J.Tax 417, 423 (Tax 1984) (quoting the American Institute of Real Estate Appraisers, The Appraisal of Real Estate, 8-9 (8th ed. 1983)); Willow/Leonia Assocs. v. Leonia Bor., 12 N.J.Tax 338, 344 (Tax 1992). Even if it is assumed that the Postal Service has an ownership interest in the post office building, the fee consists of the entire property, including all interests in both land and buildings. Since (1) the legal incidence of the local property tax falls on the property itself, (2) the legal obligation to pay the tax falls on the legal owner of the fee, and (3) the tax is charged to and collected from the legal owner of the fee, the legal incidence of the tax is not on the Postal Service. Cf. United States v. City of Detroit, supra, 355 U.S. at 469, 78 S.Ct. at 476 (upholding a Michigan property tax assessed against the lessee of government-owned property and pointing out that the statute made the lessee liable for the tax). The fact that the Postal Service may bear the economic burden of the taxes on the post office building by way of its contractual agreement with its landlord does not invalidate the tax. United States v. New Mexico, supra, 455 U.S. at 734, 102 S.Ct. at 1382 (“immunity may not be conferred simply because ... the Federal Government shoulders the entire economic burden of the levy”); United States v. County of Fresno, supra, 429 U.S. at 460, 97 S.Ct. at 703-04.
*265 The Postal Service essentially concedes the principles of tax immunity discussed above but maintains that they support its argument because it owns the post office building. In support of its argument, the Service relies primarily on Jamouneau v. Div. of Tax Appeals, 2 N.J. 325, 66 A.2d 534 (1949) and City of East Orange v. Joshua Hendy Iron Works, 24 N.J.Misc. 82, 46 A.2d 383 (Div.Tax App.1946). The Postal Service maintains that these cases establish that ownership of land and ownership of improvements may be split between different persons when questions of exemption or immunity are present and that Joshua Hendy, involving a lease quite similar to the lease at issue here, establishes that the Postal Service in fact owns the improvement.
Relying on United States v. New Mexico, supra and on the New Jersey statutes and cases imposing liability for local property taxes on the owner of the fee, the township asserts that the owner, Rainhold Holding Company, not the Postal Service, is legally liable for taxes on the post office building.
Under the terms of the lease, legal ownership of the building is not in the Postal Service. As the township points out, there is no indication that a deed has been recorded vesting title to the improvements in the Postal Service. That is hardly surprising as the parties label the Postal Service’s interest a “leasehold.” While the Postal Service may have the right to exercise an option to purchase the property for the value of the land at the conclusion of the lease, its failure to do so destroys its “title” to the building, hardly an indication that it owns a fee interest. The Postal Service is given no option to renew the lease. If it holds over without exercising its option to purchase, it has only a month-to-month lease at double the fixed rent, again not indicative of a fee interest. The continuing obligation of the Postal Service to pay rent despite a casualty affecting the property, and the payment of insurance proceeds to the landlord in the event of a casualty during the last two years of the lease and abandonment of the property by the Postal Service further suggest the existence of a leasehold rather than a fee interest in the building. I therefore *266 conclude that under the terms of the lease the Postal Service does not have legal ownership of the post office building.
The decision in Joshua Hendy Iron Works is of no aid to the Postal Service because the Division of Tax Appeals there concluded that title to the building in question had in fact vested in the federal government. As previously stated, the lease at issue here does not vest title to the building in the Postal Service.[4]
Jamouneau v. Division of Tax Appeals, supra, involved the question of whether property owned by the City of Newark and leased to a corporation for use as a factory was subject to local property tax. The pertinent statute provided an exemption for, among other things, property “of the respective counties, school districts and taxing districts, when located therein and used for public purposes____” N.J.S.A. 54:4-3.3. As to the factory building, the Court concluded that the city had not established that it owned the improvement. As to the land, the Court held that the city had failed to prove that the land was used for a public purpose. Thus the property was not exempt. The city’s failure to establish ownership of the building resulted from the terms of its lease with its commercial tenant. The lease had a 50-year term, and the tenant had an option, exercisable at any time, to purchase the land and buildings for the value of the land. Insurance proceeds were to remain the property of the tenant. In the case of a major casualty, the tenant could opt to terminate the lease and receive a share of the insurance proceeds equal to the portion of the lease still to run. Significantly, the Court did not hold that these lease terms gave the tenant legal ownership of the factory building. Rather, the Court held that the tenant’s rights were “comparable to those of an owner,” 2 N.J. at 329, 66 A.2d 534, and *267 that, “[t]he case for city ownership of the buildings has not been sustained.” Id. at 331.
In contrast to the lease involved in Jamouneau, the Postal Service’s lease does not give it rights “comparable to those of an owner.” The Postal Service’s option to purchase the property can be exercised only at the termination of the lease. The Postal Service must thus remain a tenant for 50 years; it cannot become the owner of the fee whenever it chooses. Moreover, under the Postal Service lease, a casualty affecting the property does not relieve the Service from paying rent or permit the Service to terminate the lease except during the last two years of the term. These provisions strongly suggest a leasehold, not an ownership interest.
Ultimately, Jamouneau does not address the issue in this case, namely the legal incidence of the local property tax. In particular, there was no issue in Jamouneau as to whether the city as owner of the fee or the commercial tenant had the legal liability for the taxes on the factory building once it was determined that the tenant had rights in the building comparable to those of an owner. Even if the case may stand for the proposition that legal and beneficial ownership may be separated between owner and tenant for local property tax purposes, it does not hold or suggest that in those circumstances legal liability for the taxes switches from the legal to the beneficial owner. Since the only question under United States v. New Mexico is whether the legal incidence of a state tax falls on the federal government and since Jamouneau does not suggest that the legal incidence of the local property tax falls on a tenant, even if that tenant has rights comparable to an owner, the case does not support the Postal Service’s position.
The Service suggests in its reply brief that the issue here is whether the value of the post office building can be included in .the assessment in the first place, not whether taxes on the building are chargeable to the landlord.[5] The argument is misplaced. The *268 only issue under United States v. New Mexico is whether the legal incidence of a state tax is on the federal government. The fact that the measure of the tax may take into account the value of the post office building is irrelevant. As the Supreme Court stated in United States v. Detroit, supra, in upholding a state property tax as applied to a private party’s leasehold in government owned property, “[sjtill other cases further confirm ... that it may be permissible for a State to measure a tax imposed on a valid subject of state taxation by taking into account government property which is itself tax-exempt.” 355 U.S. at 471, 78 S.Ct. at 477.
In its reply brief the Postal Service further maintains that United States v. Nye County, Nev., supra, and United States v. Hawkins, supra, stand for the proposition that government owned property “remains immune from taxation, even if the tax is a levy on a private party.” To the contrary, the two cases hold that, in the ease of a property tax ostensibly levied on a private party using government property, where the private party in fact has no property interest and the tax thus falls on the federal government as owner of the property, the tax is invalid. Here, it is plain that the local property tax is assessed against the property itself and is the legal obligation of the owner of the fee, Rainhold Holding Company. It is equally plain that Rainhold Holding has a beneficial interest in the property apart from the Postal Service’s leasehold interest. Rainhold Holding owns the fee subject only to the leasehold interests of Raintree Associates and the Postal Service. It thus has a property interest that is separable from the government’s leasehold estate and may be reached by an ad valorem property tax. As previously pointed out, the fact that the measure of the tax (the assessed value of the property) takes into account the government’s leasehold interest does not render it invalid as a tax on government owned property. United States v. City of Detroit, supra 355 U.S. at 470-71, 78 S.Ct. at 476-77.
The narrowness of the Postal Service’s argument should be emphasized. It is not arguing that the local property tax discriminates against the federal government, and it is not arguing that the tax is legally imposed on beneficial as well as legal interests. *269 Its sole argument is that it owns the post office building and that under Jamouneau and Joshua Hendy Iron Works the local property tax is separately assessed against the owner of an improvement. As I have concluded that the Postal Service does not own the improvement, that, with limited statutory exceptions not applicable here, the local property tax is assessed against the owner of the fee, and that Jamouneau and Joshua Hendy Iron Works do not support plaintiffs position, the Postal Service’s argument must be rejected.
Since the local property tax is not legally imposed on the Postal Service’s leasehold estate, the federal government’s immunity from state taxation is not infringed. Accordingly, the Postal Service’s motion for summary judgment is denied. A telephone conference call will be scheduled to determine whether the cases should be dismissed or whether plaintiffs wish to pursue the valuation issue raised in paragraph 8 of the complaints.

 The reasoning in United States v. Colorado and United States v. Hawkins has been questioned on the ground that the government contractor’s use of the property was in furtherance of its separate, profit making operation and that use could be subjected to a state tax. See Hellerstein and Hellerstein, II State Taxation, ¶ 22.03[2] at 22-20 & n. 102, (2d ed. 1993). See also the dissenting opinions of Judge Noonan in United States v. Nye County, Nev., supra, 938 F.2d at 1044-45, and United States v. County of San Diego, 965 F.2d 691 (9th Cir.1992). The dispute in these cases centers on whether the particular state tax reaches the particular interest held by the government contractor, which is generally a right to lease or use government property.

 This does not mean that a property owner has personal liability for the tax. Freehold Office Park Ltd. v. Freehold Tp., supra, 12 N.J.Tax at 440. The lien is against the property, not the owner, but the "property" is the owner's fee interest. Becker v. Little Ferry, supra, 126 N.J.L. at 340, 19 A.2d 657.

NJ.S.A. 54:4 — 2.3 and NJ.S.A. 54:4-1.10 in combination are analogous to the Michigan tax statute upheld in United States v. City of Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958), as applied to a lease of federally owned property to a private industrial concern. See Egg Harbor City v. Atlantic Cty., 10 N.J.Tax 7, 12-17 (Tax 1988).

 Moreover, defendant correctly points out that the Tax Court is not bound by Joshua Hendy Iron Works, a decision of the former Division of Tax Appeals, an administrative agency that was part of the executive branch of government. Even if viewed as a judicial opinion, the decision is no more than a decision of a trial court, which is not binding on another trial court. State v. Machuzak, 227 N.J.Super. 279, 281, 546 A.2d 1099 (Law Div.1938) ("Absent an appellate court determination on point, a trial court is not bound to follow the holding of another trial court.”)

 The landlord in this case is the ground lessor Raintree Associates. The taxes in fact are chargeable to the owner Rainhold Holding Company.