EDYTHE P. WHIPPLE, PROSECUTOR-APPELLANT, v. TOWNSHIP OF TEANECK, ETC., DEFENDANT-RESPONDENT.

Submitted October 25, 1946—Decided March 20, 1947.

For the appellant, *Louis G. Morton*.

For the respondent, *Donald M. Waesche*.

The opinion of the court was delivered by

McGeehan, J. This appeal is from a judgment of the Supreme Court which dismissed the writ of *certiorari* theretofore allowed on the application of appellant.

On July 17th, 1945, Frederic Andreas and Mabel Moore Andreas, his wife, executed a deed conveying certain premises in Teaneck to the Township of Teaneck. The granting clause states, "for and in consideration of one and 00/100 Dollar and other good and valuable consideration, do hereby give, grant * * *" and the *habendum* clause, "* * * subject, however, to the following reservations, exceptions, conditions and restrictions:

"First: The said Frederic Andreas and Mabel Moore Andreas, his wife, or either, or the survivor of them, shall have the right to the full, complete, and undisturbed possession, use, enjoyment, and control of said land and premises so long as either may live, and without the obligation to pay any tax or taxes on said premises;

"Second: Upon the termination of the life estate heretofore mentioned, the land and premises herein described shall be used by the public for park, playground, or other recreational purposes and activities, and in the event the Grantee shall use or suffer the use of said premises for any other purpose this conveyance shall thereupon become void and the title to said premises shall revert to the heirs at law of said Frederic Andreas, who shall have the right to re-enter and repossess the same;

"Third: The land and premises herein described shall be named in an ordinance to be adopted by the Township of Teaneck, upon the termination of the life estate, as the 'Maria W. Andreas Memorial Park,' and shall thereafter be known as such, and a suitable dedicatory monument shall be placed thereon;

"Fourth: The residence now standing upon the land herein described shall be taken down and removed from the premises by the Township of Teaneck within one year after the termination of the life estate by the death of the surviving life tenant, or by the surrender to the Township of Teaneck of the life estate by the Grantors herein or the survivor of them."

This deed was recorded August 8th, 1945. An ordinance of the municipality was introduced August 7th, 1945; was published and then passed on September 5th, 1945. This ordinance is entitled "An Ordinance accepting a gift of property from Frederic Andreas to be used for park purposes," and every reference therein to the transaction terms it a "gift." The fourth "Whereas" states "Frederic Andreas has offered to give to the Township of Teaneck the land and premises hereinafter described * * *;" Section 1 "The Township * * * accepts the deed * * * subject to the reservations, exceptions, conditions and restrictions therein set forth;" Section 5 "* * * the splendid public spirit which prompted Frederic Andreas and Mabel Moore Andreas, his wife, to make the gift * * *." This ordinance sets forth the description of the land and premises, but the only information concerning the conditions, &c., of the deed is as follows:

"SECTION 3. Upon the termination of the life estate mentioned in the deed aforesaid, the lands and premises described above shall be known as the 'MARIA W. ANDREAS MEMORIAL PARK,' and a suitable dedicatory monument shall be placed thereon.

"SECTION 4. Upon the termination of the life estate aforesaid, the dwelling now standing upon the land above described shall be immediately taken down and removed from the premises."

Appellant contends that this municipal action is *ultra vires* because the first condition in the deed constitutes an exemption of the lands from taxation during the life tenancy in disregard of the provisions of *article IV, section VII, paragraph* 12 *of the State Constitution* and *R. S.* 54:4–3.3. If the language of the "First" condition be construed as an agreement that no taxes will be assessed and levied against the lands during the life tenancy, it would be clearly *ultra vires* and the Supreme Court so held, stating the applicable principle "It is not within the province of the municipality to grant an exemption of the land from the burden of taxation." The Supreme Court construed it as an agreement by the municipality "to assume the burden of taxes assessed against the lands during the existence of the life tenancy" and under this construction held that it did not purport to be and was not, in fact, a grant of tax exemption. In this the Supreme Court erred.

"Exemption, as applied to taxation, is freedom from the burden of enforced contribution to the expenses and maintenance of government," 61 *C. J.* 382 and cases cited. An agreement by a municipality under which the municipality accepts title to lands subject to a life estate and agrees to pay the taxes on the lands while possession, use, enjoyment and control is in others under such life estate, is not only a grant of tax exemption but also a type of tax exemption which is more burdensome on the remaining taxpayers of the municipality than the ordinary form. Tax exemption in its ordinary form frees the property from its *pro rata* contribution of taxes because no levy is made; in its form in this case, it equally frees the property from its *pro rata* contribution of

taxes, even though the tax is levied because the municipality pays the taxes by means of an added levy on its remaining taxpayers, thereby transferring to the remaining taxpayers the burden of taxes which should be borne by the property. It is clear that this extraordinary form of tax exemption is more burdensome on the remaining taxpayers of the municipality. The total, amount of tax levied on the property is comprised of municipal, county and state taxes. In ordinary tax exemption, no levy of the tax is made against the property,. but the amount of municipal tax lost falls upon the remaining taxpayers of the municipality, the amount of county tax lost is spread over all the taxpayers of the county and the amount of state tax lost, over all the taxpayers of the state; so that the impact on the remaining taxpayers of the municipality is always less than the total amount of tax levied. Under this extraordinary form of tax exemption by which the taxes are. levied and the municipality pays them, the remaining taxpayers of the municipality must raise the total amount of tax lost—a greater burden than imposed when the tax exemption is in common form. Substance rather than form is the controlling factor and this agreement is *ultra vires* because its effect is to grant tax exemption.

*Perth Amboy Trust Co.* v. *Perth Amboy,* 75 *N. J. L.* 291, and *Demarest* v. *Mayor and Council of Bergenfield,* 8 *N. J. Mis. R.* 617, are not analogous. In those cases, lands were conveyed to the municipality for use in a street improvement subject to a condition that no assessment or only a partial assessment would be levied against grantor's remaining lands for benefits arising out of the contemplated street improvements. A municipality has power to make any street improvement as a general improvement, in which case no assessment for benefits can be made; it also has power to make a street improvement as a local improvement, and in such case it can assess all or only part of the benefits, as it may determine. See *R. S.* 40:56–1 and 40:56–12. Since the municipality had contracted to do only what it was empowered to do without the need of any contract, the contract was not *ultra vires* and the municipality was bound thereby.

Since we have concluded that there should be a reversal

for the reasons given above, we express no opinion on the further contentions of appellant that no proper notice of the purchase price was given and that no proper appropriation for the purchase was shown.

The judgment under appeal is reversed, with costs.

*For affirmance*—BODINE, WACHENFELD, DILL, JJ. 3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, PERSKIE, EASTWOOD, WELLS, FREUND, McGEEHAN, McLEAN, JJ. 9.