LESLIE H. JAMOUNEAU, A CITIZEN AND TAXPAYER OF THE CITY OF NEWARK, PROSECUTOR-APPELLANT, v. DIVISION OF TAX APPEALS IN THE DEPARTMENT OF TAXATION AND FINANCE OF THE STATE OF NEW JERSEY ET AL., RESPONDENTS-RESPONDENTS.

Argued May 9, 1949—Decided June 6, 1949.

326

*Mr. Saul A. Wittes* argued the cause for the prosecutor-appellant.

*Mr. Vincent J. Casale* (*Mr. Thomas L. Parsonnet,* attorney) argued the cause for the respondent-respondent City of Newark.

*Mr. John R. Hardin* (*Messrs. Pitney, Hardin & Ward,* attorneys) argued the cause for C-O Two Fire Equipment Company, respondent-respondent.

The opinion of the court was delivered by

CASE, J. The appeal is from a judgment in the former Supreme Court which affirmed a judgment in the Division of Tax Appeals exempting from taxation certain land, with the buildings thereon, owned by the City of Newark and leased to the C-O Two Fire Equipment Company.

The premises consist of a factory site of 8.58 acres, owned by the City of Newark, upon which is a modern factory building erected by and at the cost of the tenant, C-O Two Fire Equipment Company, and in active operation by the tenant for its own commercial purposes. On the Newark tax duplicate the personal property is assessed for the purposes of taxation against the C-O Two Fire Equipment Company at $250,000; and the land is given an assessment value of $42,900 and the building of $250,000. Although the land and the building are thus given assessment values, they are carried in the name of the City of Newark as owner and are not taxed.

On August 13, 1941, the City of Newark entered into a lease agreement between itself as landlord and the C-O Two Fire Equipment Company as tenant for the lands in question for a term of fifty years commencing October 1, 1941, at an annual rental of $5,000. There was an option to the tenant to purchase the city's fee at any time during the term of the lease at the price of $10,000 per acre ($85,000 in the whole). The tenant agreed to erect at its own cost the factory building mentioned above according to its own plans and specifications, which building was to become forthwith the property of the landlord, as a part of the demised premises. The tenant was burdened with the making of all repairs and of making such changes as might become necessary in order to comply with governmental or bureaucratic requirements. The tenant was bound to carry adequate fire insurance and to pay the premiums thereon. In case of a partial fire loss all the insurance money remaining after payment for repairs was to become the property of the tenant, and if there should be a fire loss involving more than fifty per cent. destruction the tenant might, at its option, terminate the lease and receive the insur-

ance moneys in the proportion of one-fiftieth of such moneys for each year then remaining of the term of the lease. The city agreed not to exercise its right of eminent domain. In the event of condemnation by other authority the tenant was to be entitled to the full amount of the condemnation award for the building. The city agreed to pay or satisfy all taxes then a lien upon the lands or which during the term of the lease might become a lien or charge upon the lands or upon the buildings or improvements to be placed thereon. The instrument did not differ materially from the usual long term lease made between a private owner and a private tenant.

The books of the C-O Two Fire Equipment Company carried the building as a fixed asset of the corporation as of December 1, 1942, at $441,542.63.

■ Pursuant to the provisions of *R. S.* 54:3–21 prosecutor-appellant, a citizen and taxpayer of the City of Newark, petitioned the Essex County Board of Taxation to assess the premises for 1943 taxes. That board decided that it lacked jurisdiction. On appeal, the State Board of Tax Appeals held that the county board had jurisdiction (a conclusion with which we concur) but nevertheless dismissed the appeal upon the ground that the property was either properly excluded from taxation or, under the provision of *R. S.* 54:4–3.3, was exempted from taxation. On *certiorari* the former Supreme Court affirmed, 137 *N. J. L.* 384.

While the lease is not before us for review as to its validity or for interpretation as to the rights or obligations of the parties *inter sese,* it is an exhibit in the case and is evidential of the intent of the parties and of the status of the property with respect to taxability. Looking through the words to the essence of the agreement, we conclude that the lease anticipated complete depreciation and obsolescence of the building at the end of the fifty-year term and a pro-rated amortization of the building costs over the period of the lease with intermediate recognition of rights on the part of the tenant comparable to those of an owner. The option given to the tenant to purchase the land and buildings at any time during the term of the lease for the value of the land is an indication

that the parties believed the beneficial ownership of the building was in the tenant. Otherwise the acceptance of the option by the tenant to purchase would result in a gift to it by the city of a building worth actually $441,542.63, with a taxation value of $250,000 at assessment levels, as of the tax year now in dispute, to be amortized downward with the passing of the years. There was also a clause which barred the city, at the termination of the lease, from leasing to another tenant without first offering to lease to the present tenant on terms equally favorable.

The use was exclusively private and commercial; there was neither vestige of a present public use nor prospect of a future public use within the term of the lease. The building was entered on the tax duplicate as an exempt asset with an assessed value of something more than half of the capitalized figure on the company's books; and the land was carried, likewise as exempt, at precisely one-half of the proffered sale price. The lease provides that "any building or buildings erected on the demised premises shall be and become, upon erection, the property of the Landlord, and a part of the freehold estate of the Landlord, and shall be added to and be a part of the demised premises." But such a provision may not be isolated from the rest of the agreement and made a conclusive barrier against taxation. Counterbalanced by other provisions which put the incidents of ownership of the buildings in the tenant, it will not serve to create a tax immunity on the theory that the buildings are owned, in a tax sense, by the city. The lease also provided, as we have noted, that the city would pay taxes upon improvements to be erected by the tenant. An undertaking by the city to pay taxes does not, obviously, carry tax exemption to a structure otherwise taxable, and does not relieve the assessor from the duty to make an assessment for the purpose of taxation if the property, except for that assumption by the city, is taxable. The burden of proof is upon him who asserts a tax exemption to establish the asserted right. *Trenton v. State Board of Tax Appeals*, 127 *N. J. L.* 105 (*Sup. Ct.* 1941); affirmed, *sub nom. Trenton v. Rider College*, 128 *N. J. L.* 320 (*E. & A.*

1942). The case for city ownership of the buildings has not been sustained. (On the subject of agreements by a municipality to exempt from or assume the burden of taxes, *Cf. Whipple v. Teaneck Township,* 135 *N. J. L.* 345 (*E. & A.* 1947).

But beyond that, and with respect to both land and buildings, we think that the property is taxable. The underlying statutory direction to tax is in *R. S.* 54:4–1, which at the time in question was as follows:

"All property, real and personal, within the jurisdiction of this State not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter at its true value, and shall be valued by the assessors of the respective taxing districts. * * *"

A further statutory provision is *R. S.* 54:4–3.3 which as of that time provided (italics inserted):

"The property of the United States, and, except as otherwise provided by article 1 of this chapter (§ 54:4–1, *et seq*), the property of the State of New Jersey; and the property of the respective counties, school districts and taxing districts, when located therein and *used for public purposes,* or for the preservation or exhibit of historical data, records or property shall be exempt from taxation under this chapter, * * * *."

The words "when located therein" were held in *Jersey City v. Blum,* 101 *N. J. L.* 93 (*E. & A.* 1924), to be an attempt by the Legislature to classify for taxation the property of taxing districts used for public purposes solely by reference to the location thereof and therefore in contravention of article IV, section 7, paragraph 12 of the 1844 Constitution, which required that property should be assessed for taxes under general laws and by uniform rules. It was held that the imposition of a tax upon property used for the Jersey City Water 'Supply merely because it was located in a municipality other than Jersey City, was unconstitutional. Nothing herein impinges thereon. But the striking down of the phrase "when located therein" does not impair the rest of the sentence.

Those words are not essential to or a necessary part of the context. There remains the fair and just exemption from taxation of property used for the public. *Essex County Park Commission v. State Board of Tax Appeals*, 129 *N. J. L.* 336 (*Sup. Ct.* 1943).

In *Township of Teaneck v. State Board of Tax Appeals*, 110 *N. J. L.* 28 (*Sup. Ct.* 1932); affirmed, 111 *N. J. L.* 242 (*E. & A.* 1933), the disputed assessment was on land which was owned by the County of Bergen and which was at the time idle although there had been several efforts to put it to a public use and the land was being held until the freeholders could make a suitable use of it for county purposes. Distinguishing circumstances between that case and this are that there the property was idle awaiting application to public purposes and, so, could be said to be in potential public use, while here the die has been cast contrarily and the property is frankly, solely and absolutely in private use by a commercial enterprise under a long term lease with an option to the lessee to purchase. The statement in the Teaneck opinion that the question whether the lands were or were not used for public purposes was irrelevant and academic, was made specifically with respect to the situation there under discussion and is not to be understood as the pronouncement of a general principle. If the expression was intended for wider application, it is to be classed as judicial *dictum* because it was not necessary to the decision then being made; as such it is entitled to due consideration but does not invoke the principle of *stare decisis*.

We are clearly of the opinion in the instant case that the buildings are not publicly owned property in the sense that they should be given exemption from taxation. The land presents a more difficult problem. But we are strongly influenced, as we think we should be, by the statutory phrase "when * * * used for public purposes." Those words either require a public use, in addition to public ownership, as a condition to exemption from taxation or they are meaningless. "The property of the * * * taxing districts" assumes the necessity for public ownership; the statute does not apply unless the property is publicly owned. "When

\* \* \* used for public purposes" is an added condition. Significance should be given, so far as possible, to all statutory language. It is a cardinal rule of statutory construction that statutes are to be so construed that, if possible, full force and effect shall be given to every sentence, clause and word thereof. *Bogert v. Hackensack Water Co.,* 101 *N. J. L.* 518 *(E. & A.* 1925). The opinion of the Court of Errors and Appeals in *Essex County Park Commission v. West Orange,* 77 *N. J. L.* 575 *(E. & A.* 1908), which furnished the basis for the *Blum* and the *Teaneck* decisions, *supra,* used this language in accepting the condition of use for public purposes as real and valid (italics inserted):

"The original act of 1903 provides that 'the property \* \* \* of the State of New Jersey and of the respective counties, school districts and taxing districts, when used for public purposes,' shall be exempt from taxation. *Pamph. L.* 1903, *p.* 394, § 3. Such exemption is justified, *having regard to the use to which the property is put,* and is not violative of article 4, section 7, paragraph 12 of the constitution, which directs that 'property shall be assessed under general laws by uniform rules,' for property may be classified in respect to its use, and a law based upon such classification will be general."

Some confusion has arisen in our cases from the inadvertent use of broader language than was required by the questions to be decided. For illustration, a part of Mr. Justice Parker's opinion in the *Teaneck case* seems at variance with the later Supreme Court opinion in *Essex County Park Commission v. State Board, supra;* yet Mr. Justice Parker sat on the court and concurred in the opinion in the latter case; and we are led to think that the explanation lies in the analysis given earlier herein. Both cases are mentioned but their differences are left unadjusted in *Landis Township v. Division of Tax Appeals,* 137 *N. J. L.* 224 *(E. & A.* 1948).

Our conclusion is that the statute requires, on the facts of this case, a public use, in addition to public ownership, as a condition of exemption from taxation; and that the receipt of rentals from a private lessee does not transform a private use into a public use.

The judgment below will be reversed. The record will be remanded to the end that the property be subjected to taxation.

OLIPHANT, J. (Dissenting.) I dissent for the reasons expressed by Mr. Justice Wachenfeld in his opinion for the former Supreme Court in this case. 137 *N. J. L.* 384.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, BURLING and ACKERSON—4.

*For affirmance*—Justice OLIPHANT—1.