**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2065-17T1

ANATOLIY KHUSID,

    Plaintiff-Appellant,

v.

GARY WILKIN,

    Defendant-Respondent.

_____

              Submitted September 13, 2018 – Decided  January 31, 2019

              Before Judges Hoffman and Suter.

              On appeal from Superior Court of New Jersey, Law Division, Somerset County, Docket No. SC-000538-17.

              Anatoliy Khusid, appellant pro se.

              Stark & Stark, attorneys for respondent (A. Christopher Florio, of counsel and on the brief; Bianca A. Roberto, on the brief).

PER CURIAM

    Anatoliy Khusid appeals the December 18, 2017 Order of Disposition entered in favor of defendant Gary Wilkin after a bench trial in the Special Civil

Part, Small Claims section, which dismissed his complaint for breach of contract requesting $3000 to repair parking spaces at his residence. We affirm.

Plaintiff owns a single family attached duplex in the LongMeadow Neighborhood (LongMeadow) in Bedminster. LongMeadow is governed by the LongMeadow Neighborhood Association, Inc. (Association). Its Board of Trustees contracted with Wilkin Management Group, Inc. (WMG) to provide the Association with property management services for commonly held property within LongMeadow. WMG is the "sole and exclusive property manager" for the Association. Gary Wilkin is WMG's President.

On November 7, 2016, plaintiff sent an email to Richard Mattalian, property manager for WMG, regarding "pavement repair[]." Plaintiff complained his parking places had "a lot of cracks and holes (up to [three inches]) along the [adjoining] road, [with] weeds growing [through] asphalt." Plaintiff asked for repairs, contending the Association was responsible for maintaining these parking spaces. Mattalian responded that "parking bays" are "[d]eeded to the unit owner's property/lot" and that their "maintenance and repair . . . is [the] unit owner['s] responsibility." Plaintiff emailed WMG Vice President Brian Weaver, for clarification because plaintiff contended "[p]arking

A-2065-17T1

lots" were "common elements" for which the Association was responsible. He

attached part of the Public Offering Statement (POS) that stated:

> [t]he common property owned by the LongMeadow Association consisted of the non-collector roads and any localized recreation fields or facilities, if any, which may be provided or established. The common elements to be maintained by the LongMeadow Association include the front yard, the side yard from the front of the building to midpoint of the side wall of the building, retaining walls, sleep slopes especially where retaining walls exist, the sidewalk (if any) and curbs along non-collector roads <u>and all parking areas/spaces</u>. (The LongMeadow Association will remove any snow accumulation on sidewalks on non-collector roads and on all parking areas/spaces.) Each duplex owner will be responsible for maintenance and repair of the building exterior, roof, front stoop, porch, patio, fences around garden area (if any), side yard from the rear of the building to the midpoint of the side wall of the building, backyard, the pathway from the front door to the curb or sidewalk (including the removal of any snow accumulation on said pathway), and the fence (if any) that generally runs along the side-yard boundary line. The LongMeadow Association will provide and pay for trash removal services and will insure the building exteriors and roofs. <u>Each duplex lot will contain two parking spaces.</u>
>
> [(Emphasis added).]

A-2065-17T1

Mattalian responded that the Association's Master Deed[1] differentiated "[p]arking [a]reas" from "[d]riveways." He explained that parking areas are located "in the cul-de-sacs and on LongMeadow Road." Driveways are "[p]arking [b]ays," referred to as "separate [i]mprovements." The Declaration did not include "[d]riveways" as common elements, according to Mattalian. Instead, they were "denoted on the unit owner's [d]eed," making maintenance and repair the unit owner's responsibility. Portions of the Declaration were attached, which defined the terms "improvement" and "site plan" as, among other things, "driveways, parking spaces . . . ." Plaintiff asked Mattalian to raise the issue with the Board, reiterating the Association was responsible for parking area maintenance. Mattalian advised that "[d]riveways" were not common areas.

In March 2017, plaintiff renewed the issue with Mattalian, asking if he could be reimbursed for parking lot repairs. Mattalian responded that "parking areas/spaces" were not "[p]arking [b]ays/[d]riveways," and that the latter were deeded to the unit. Mattalian offered to give the Board any supporting documentation plaintiff had of his position.

---

[1] His reference was to the Association's Declaration of Covenants, Conditions and Restrictions (Declaration) and not the Master Deed.

A-2065-17T1

In October 2017, plaintiff filed a complaint in the Special Civil Part, Small Claims section against "Gary Wilkin as owner of Wilkin Management Group," demanding judgment for $3000 because WMG "failed to comply with the written contract" and this failure to make repairs led to property damage. He attached a lengthy explanation of his position, relying for support on portions of the POS and the contract between WMG and the Association.

Under the Declaration,[2] common property is maintained by the Association. Each duplex (lot) contains two parking spaces. The Association is responsible "to repair, restore, and maintain in good condition some but not all of the [c]ommon [e]lements." This included "parking spaces/areas."

The contract between the Association and WMG stated that the governing documents of the Association were controlling. Plaintiff also attached a copy of a survey that delineated an "asphalt parking area." It did not use the term parking bays or driveways.

In the December 2017 bench trial, the court stated that although Wilkin had been named as a defendant, the case was going to "proceed against the company." Plaintiff did not object to adding WMG but he was unwilling to

_____

[2] The record is not clear whether the trial court had a copy of the entire Declaration. Plaintiff has included a copy in his appendix that appears to be a recorded document.

include the Association as a defendant. Plaintiff's request to amend his complaint to add claims for fraud and tort was denied.

Plaintiff claimed the Declaration required WMG to repair his parking spaces because the Association was responsible for these areas. He submitted three repair estimates. The court would not consider plaintiff's testimony that water freezing could negatively affect cracks in asphalt because he did not have an expert. Plaintiff argued the governing documents for the Association did not use the term parking bays.

Mattalian testified that unit owners own their lots in fee simple, meaning that "[t]he homeowner owns the lot and its improvements." The Association had maintenance responsibilities that include "maintain[ing] the yard, cut[ting] the grass, trim[ming] hedges, trim[ming] trees." Citing the Declaration, the term "improvement" was defined as including "driveways, parking areas." The term "lot" was defined as including "any improved or unimproved plot of land designated upon any recorded final subdivision map or a plot of any part of the property, with the exception of the common property, together with any building improvements, and common elements contained therein." Mattalian testified the Association had not done any repairs to anyone's driveway and it had no reserves set aside for driveways. He acknowledged the predecessor management

company may have made repairs to parking spaces or driveways as a "courtesy." He interpreted the area plaintiff was referencing as a "driveway" because it is within the "boundaries of the lot." He could not answer why the Declaration entitled unit owners to "two parking spaces" rather than "driveways" other than to say it's "decades old."

The court dismissed plaintiff's complaint based on the undisputed testimony that the parking spaces were on plaintiff's property. The court stated this was not a complaint against the Association seeking to have it make the repair "which would have been the appropriate . . . way of proceeding in this matter, but, rather, it [was] a claim by a fee simple homeowner against the management group of the Association for money damages" to make repairs "on his own property." The court held it was not WMG's responsibility to make the repairs and then added that it also was not the "requirement" of the Association because the area was on plaintiff's property.

On appeal, plaintiff contends the trial court erred by dismissing his complaint because repair of the parking spaces is the responsibility of the Association.

We afford a deferential standard of review to the factual findings of the trial court on appeal from a bench trial. Rova Farms Resort, Inc. v. Inv'rs Ins.

<u>Co.</u>, 65 N.J. 474, 483-84 (1974). These findings will not be disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . ." <u>Id.</u> at 484 (quoting <u>Fagliarone v. Twp. of N. Bergen</u>, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, our review of a trial court's legal determinations is plenary. <u>D'Agostino v. Maldonado</u>, 216 N.J. 168, 182 (2013) (citing <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

Our decision is a narrow one. Plaintiff sued Wilkin for breach of contract. To establish its breach of contract claim, plaintiff was required to prove:

> first, that "[t]he parties entered into a contract containing certain terms"; second, that "[plaintiff] did what the contract required [it] to do"; third, that "[defendants] did not do what the contract required [them] to do[,]" defined as a "breach of the contract"; and fourth, that "[defendants'] breach, or failure to do what the contract required, caused a loss to [plaintiff]."
>
> [<u>Globe Motor Co. v. Igdalev</u>, 225 N.J. 469, 482 (2016) (quoting <u>Model Jury Charge (Civil)</u>, 4.10A, "The Contract Claim-Generally" (May 1998)).]

No one disputed that there was no written or oral contract between plaintiff and defendant or that plaintiff paid defendant any monies. As such, plaintiff could not establish there was a contract with defendant or any breach.

8

The trial court immediately recognized plaintiff may have intended to sue WMG because the complaint named Wilkin as owner of WMG. The court amended plaintiff's claim, sua sponte, to include WMG. Rule 4:29-1(b) permits a court "on its own motion" to "order the joinder of any person subject to service of process whose existence was disclosed . . . by any other means who may be liable to any party on the basis of the same transactional facts." There was no error in amending the complaint under Rule 4:29-1(b) to include WMG.

That said, however, we affirm the judgment that dismissed plaintiff's claim against WMG. The Association had a contract with WMG, not plaintiff. Plaintiff declined the court's offer to include the Association as a defendant. The case proceeded without the Association as a party. We are satisfied the court properly dismissed the breach of contract case against WMG because plaintiff had no contract with WMG.

The court denied plaintiff's motion to amend the complaint against WMG to include claims for fraud and tort. Plaintiff made no proffer to support his fraud claim nor did he allege what duty WMG owed him that was breached. To amend the complaint as requested by plaintiff would have been futile against these parties, and the court was correct to reject plaintiff's motion. See R. 4:9-1.

At the end of the case, the trial court pronounced that the Association was not responsible for the repairs to the parking areas. This was <u>dictum</u> that is not binding on plaintiff. "Dictum is a statement by a judge 'not necessary to the decision then being made[,]' and 'as such it is entitled to due consideration but does not invoke the principle of <u>stare decisis</u>.'" <u>Brandler v. Melillo</u>, 443 N.J. Super. 203, 210 (App. Div. 2015) (quoting <u>Jamouneau v. Div. of Tax Appeals</u>, 2 N.J. 325, 332 (1949)). "[P]ortions of an opinion that are dicta are not binding." <u>Ibid.</u> (citing <u>Nat'l Mortg. Co. v. Syriague</u>, 293 N.J. Super. 547, 544 (Ch. Div. 1994)). That this was dictum is clear; the Association was not a party to this action. Also, although the parking areas may have been within plaintiff's "lot," the trial court never resolved if they were "common property" or "common elements." Those definitions appear to include other portions of plaintiff's "lot," such as the "front yard, the side yard from the front of the building to midpoint of the sidewall . . . ." Plaintiff included a deed and surveys in his appendix that likely were not before the trial court but could have relevance on this issue. There was no testimony about these documents. Given the state of this record and the absence of the Association as a party, we consider the court's statement about the Association as non-binding.

After carefully reviewing the record and the applicable legal principles, we conclude that plaintiff's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION