**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3543-18T4

K.D.,

       Plaintiff-Appellant,

v.

A.S.,

       Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 5, 2020**
>
> **APPELLATE DIVISION**

Argued January 23, 2020 – Decided March 5, 2020

Before Judges Fuentes, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FD-15-0550-19.

Jeyanthi C. Rajaraman argued the cause for appellant (Legal Services of New Jersey, attorneys; Jeyanthi C. Rajaraman, of counsel and on the briefs; Melville D. Miller, Jr., on the briefs).

A.S., respondent, argued the cause pro se.

Erin O'Leary, Assistant Attorney General, argued the cause for amicus curiae New Jersey Division of Child Protection and Permanency (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Erin O'Leary, on the brief).

The opinion of the court was delivered by

ENRIGHT, J.S.C. (temporarily assigned).

In this case, we are asked to determine whether a child's biological mother, who entered an identified surrender of her parental rights to her biological mother, the child's maternal grandmother, has standing as the child's legal sibling, per N.J.S.A. 9:2-7.1, to seek visitation rights against a non-relative adoptive mother. Stated differently, do biological parents who enter an identified surrender of their children to their biological parents become their children's legal siblings? We are satisfied the answer is no. As our Supreme Court made clear in Moriarty v. Bradt, 177 N.J. 84, 114-15 (2003) and reaffirmed in Major v. Maguire, 224 N.J. 1, 6 (2016), N.J.S.A. 9:2-7.1 is subject to strict scrutiny because this statute intrudes on a parent's fundamental right to raise a child as that parent sees fit. Permitting biological parents, who knowingly and voluntarily enter identified surrenders of their parental rights, to acquire the legal rights of siblings pursuant to N.J.S.A. 9:2-7.1 would ignore the Supreme Court's admonition in Moriarty and Major, and cause needless disruption and apprehension to countless families who have opened their homes and their hearts to children in need of adoption.

I

We summarize the salient procedural history and facts of this highly idiosyncratic and litigious case in order to give context to our legal analysis.

Plaintiff K.D. appeals from the March 7, 2019 denial of her request to continue visitation with her biological son, Sam, against the wishes of his non-relative adoptive mother, defendant A.S.[1] K.D. also appeals from the February 8, 2019 order granting amicus status to the Division of Child Protection and Permanency (Division). We affirm.

Sam was born in 2006. He was diagnosed with Autism Spectrum Disorder with combined repetitive and expressive language disorder, developmental fine motor coordination disorder and attention deficit hyperactivity disorder. The Division removed Sam from his mother's care at age three, after he was found crying in the middle of an intersection, while K.D. was intoxicated.

K.D. and Sam's biological father[2] entered into identified surrenders to allow Sam to be placed with his maternal grandmother, A.D. Once K.D.'s parental rights were terminated, along with those of Sam's biological father,

---

[1] We use fictitious names for the child and initials for the adults to protect the privacy of the parties and the minor involved in this matter. R. 1:38-3(d)(12).

[2] Sam's biological father is not involved in the instant appeal.

A.D. adopted Sam in March 2012. Unfortunately, A.D. passed away six weeks after adopting Sam. Carolyn, Sam's biological sister, agreed to care for him. However, this arrangement proved to be short lived. A few months after A.D.'s death, Carolyn advised the Division she was unable to care for her special needs brother on a permanent basis. She agreed to temporarily care for him until the Division found a suitable permanent placement. In May 2013, Sam was placed in A.S.'s care, where he remains.

K.D. engaged in treatment for her alcoholism after her parental rights were terminated. In June 2014, K.D. filed a motion pursuant to Rule 4:50-1 to set aside her identified surrender in her guardianship action in Hudson County and to vacate the judgment of adoption granted to A.D. in Middlesex County. On January 9, 2015, the motion judge in Hudson County denied K.D.'s application to set aside her identified surrender and directed her to prosecute her application to vacate A.D.'s adoption in Middlesex County. K.D. appealed the order issued by the Hudson County judge. Sam remained in A.S.'s care during the pendency of K.D.'s appeal.

Consistent with the Family Part decision in Hudson County, K.D. filed an application in Middlesex County to vacate Sam's adoption by A.D. The Family Part in Middlesex County heard and denied K.D.'s application to vacate the adoption as well as her motion for reconsideration. The Middlesex County

judge memorialized these decisions in orders dated February 27, 2015 and April 13, 2015, respectively.

Before the Family Part judge in Middlesex County denied K.D.'s motion for reconsideration, K.D. moved before this court to supplement the record in her appeal of the order entered by Hudson County Family Part judge. In an order dated June 3, 2015, this court denied K.D.'s motion without prejudice and "temporarily remand[ed] the matter to the trial court for the limited purpose of allowing [K.D.] to file a <u>Rule</u> 4:50 motion in the trial court based upon [an] alternative theory of changed circumstances." This court also retained jurisdiction and directed the parties and the Hudson County Family Part judge to complete all the necessary proceedings within ninety days.

The motion judge adhered to this court's directions and timeframe and after employing the two-prong test from <u>In re Guardianship of J.N.H.</u>, 172 N.J. 440, 474-75 (2002), the judge found K.D. had presented sufficient evidence of changed circumstances. However, the motion judge also found K.D. did not prove it was in Sam's best interests to change his placement or to return him to K.D.'s care and custody. K.D. thereafter amended her notice of appeal to include this final decision by the Family Part in Hudson County and the orders issued by the Family Part in Middlesex County denying her application to vacate the adoption.

On June 1, 2017, this court affirmed the order entered by the Family Part judge in Hudson County that "reject[ed] [K.D.'s] challenges to the orders denying her post-judgment attempts to set aside the voluntary surrender of her parental rights in favor of [A.D.]" N.J. Div. of Child Prot. & Permanency v. K.D., Nos. A-2651-14 and A-5513-14 (App. Div. June 1, 2017) (slip op. at 10). We also "conclude[ed] that the Middlesex [County] judge properly denied the motion to set aside the judgment of adoption." Id. at 12. In reaching this decision, we expressly held K.D. had not demonstrated that her "voluntary surrender was ineffectual to terminate her parental rights or that it is inequitable to further enforce the April 27, 2011 guardianship judgment." Ibid.

Finally, although not raised as an issue in the appeal, our colleagues took an extra step to point out the following:

> This brings us to the October 1, 2012 order, which posthumously terminated [A.D.'s] parental rights. Although [K.D.'s] appeals in the guardianship and adoptions matters do not implicate this order, which was entered in a separate matter not before us for review, we cannot ignore the fact that this order suffers from the same disabilities found in defendant's motion to vacate the judgment of adoption. There is no evidence that notice was given to [A.D.'s] personal representative or to [K.D.], who, upon [A.D.'s] adoption of the child, had become in the eyes of the law the child's sibling. And the Division's application sought relief the court was not empowered to give: the termination of parental rights of a deceased parent.

6

> The issue resolved by that court had been rendered purely academic; any debate about [A.D.'s] parental rights ended with her death.
>
> [Id. at 12-13 (emphasis added).]

A.S. adopted Sam on December 3, 2018. As noted earlier, Sam began residing with his adoptive mother in May 2013, when he was six years old. He is now fourteen. Although the Family Part authorized K.D. to have limited visitation rights before A.S. adopted Sam, A.S. decided not to continue the visits after the adoption became final. K.D. filed an order to show cause on December 11, 2018, seeking to reinstate her visits over A.S.'s objection. A Family Part judge in Ocean County denied K.D.'s application for emergent relief. Although not a party in the case, the Division opposed K.D.'s application to have visitation rights to Sam and moved to intervene. The court denied the Division's motion to intervene but granted its supplemental application to appear and participate as amicus curiae.

On March 7, 2019, the judge heard oral argument on K.D.'s application to reinstate regular visits with Sam and also heard A.S.'s cross-motion to dismiss. Because the parties presented documentary evidence which was outside the four corners of the factual allegations in the pleadings, the judge sua sponte decided to treat A.S.'s dismissal application as a motion for summary judgment under Rule 4:46-2(c).

The judge analyzed K.D.'s request for visitation under certain legal frameworks, including: her status as the child's biological mother whose parental rights had been terminated under Title 30; a legal sibling, pursuant to N.J.S.A. 9:2-7.1; and a psychological parent. See V.C. v. M.J.B., 163 N.J. 200, 223 (2000). The judge concluded that none of these analytical paradigms created the "exceptional circumstances" necessary for the court's intervention. Moriarty, 177 N.J. at 114. He further found that under any of these paradigms, K.D. failed to establish a prima facie case that visitation with Sam was necessary to avoid harm to the child. Accordingly, the judge determined there was no need for an evidentiary hearing and he denied K.D.'s request to compel visits over A.S.'s objection. K.D. filed this appeal after we denied her application for emergent review.

II

On appeal, K.D. argues the judge's denial of her visitation motion, without conducting a plenary hearing, constitutes error. Moreover, she contends the judge erred in allowing the Division amicus status. We disagree.

We start our analysis by addressing whether K.D. became Sam's sibling "in the eyes of the law" upon A.D.'s adoption of Sam, as mentioned by our colleagues in their June 1, 2017 unpublished opinion. We are satisfied our colleagues' reference to K.D.'s sibling status is not legally binding on us based

on two separate grounds. First, this legal "characterization" of K.D. was indisputably dictum. Indeed, our colleagues acknowledged in their 2017 opinion that such commentary pertained "[to] a separate matter not before us for review." K.D., at 12. It is well-settled that "[d]ictum is a statement by a judge 'not necessary to the decision then being made[,]' and 'as such it is entitled to due consideration but does not invoke the principle of stare decisis.'" Bandler v. Melillo, 443 N.J. Super. 203, 210 (App. Div. 2015) (quoting Jamouneau v. Div. of Tax Appeals, 2 N.J. 325, 332 (1949)) (alteration in original). Second, as Rule 1:36-3 makes clear, "[n]o unpublished opinion shall constitute precedent or be binding upon any court."

There are profound public policy ramifications to characterizing K.D. as the legal sibling of her biological son under these circumstances. We begin our discussion of this extraordinarily delicate area of law, mindful of our Supreme Court's admonition in In re D.C.:

> Our law recognizes the family as a bastion of autonomous privacy in which parents, presumed to act in the best interests of their children, are afforded self-determination over how those children are raised. All of the attributes of a biological family are applicable in the case of adoption; adoptive parents are free, within the same limits as biological parents, to raise their children as they see fit, including choices regarding religion, education, and association. However, the right to parental autonomy is not absolute, and a biological family may be ordered to permit third-party visitation, over its objections, where

it is necessary under the exercise of our <u>parents patriae</u> jurisdiction to avoid harm to the child. That principle governs adoptive families as well.

[203 N.J. 545, 551-52 (2010).]

As a "parent is entitled to a presumption that he or she acts in the best interests of the child, . . . the parent's determination whether to permit visitation is entitled to 'special weight.'" <u>Major</u>, 224 N.J. at 15 (citing <u>Troxel v. Granville</u>, 530 U.S. 57, 67-69 (2000)). Thus, "the need to avoid harm to the child is 'the only [S]tate interest warranting the invocation of the State's <u>parens patriae</u> jurisdiction to overcome the presumption in favor of a parent's decision and to force [third-party] visitation over the wishes of a fit parent[.]'" <u>Id.</u> at 16 (quoting <u>Moriarty</u>, 177 N.J. at 115) (second alteration in original).

"[A]bsent a showing that the child would suffer harm if deprived of contact with [the third party], the State [can]not constitutionally infringe on parental autonomy." <u>Ibid.</u> (citing <u>Moriarty</u>, 177 N.J. at 115). When the third party does demonstrate such harm, the presumption in favor of parental decision-making is overcome, and the parent is then obliged to offer a visitation schedule that is in the child's best interest. <u>Id.</u> at 17. These principles are applicable to the instant matter, as "[a]ll of the attributes of a biological family are applicable in the case of adoption." <u>D.C.</u>, 203 N.J. at 551.

On appeal, K.D. renews her argument that Sam will suffer harm if he is not permitted visits with her and she relies on the case of Kattermann v. Di Piazza, 151 N.J. Super. 209 (App. Div. 1977) to support her request for post-adoption visits. Her argument is unavailing. As the Family Part judge aptly recognized, the Kattermann court applied a now outdated best interests standard to factual circumstances distinguishable from the case at hand. Further, as the Moriarty Court made clear, "interference with parental autonomy will be tolerated only to avoid harm to the health or welfare of a child." Moriarty, 177 N.J. at 115. Moreover, almost a decade ago, the D.C. Court confirmed the best interests standard should not be utilized in third-party, post-adoption visitation disputes, noting:

> the application of the best interests standard to a third party's petition for visitation is an affront to the family's right to privacy and autonomy and . . . interference with a biological or adoptive family's decision-making can only be justified on the basis of the exercise of our parens patriae jurisdiction to avoid harm to the child.

> [D.C., 203 N.J. at 573 (emphasis added).]

Therefore, a third party seeking to compel contact with a child over an adoptive parent's wishes must meet the threshold burden of proving by a preponderance of evidence that the child will suffer harm without the contact. In fact, the moving party must demonstrate "a particular identifiable harm,

11

specific to the child." Mizrahi v. Cannon, 375 N.J. Super. 221, 234 (App. Div. 2005). As the D.C. Court confirmed, "an adoptive family is not entitled to greater protections than a biological family. Thus, to the extent that visitation by a third party may be compelled over the objections of a biological family, the same rule applies to an adoptive family." 203 N.J. at 570. Clearly, then, it is settled law that siblings by adoption have the same legal rights as biological siblings.

Guided by these principles, we review the Grandparent and Sibling Visitation Statute, which provides in relevant part:

> A grandparent or any sibling of a child residing in this State may make application before the Superior Court, in accordance with the Rules of Court, for an order for visitation. It shall be the burden of the applicant to prove by a preponderance of the evidence that the granting of visitation is in the best interests of the child.
>
> [N.J.S.A. 9:2-7.1(a).]

Accordingly, the question here is whether K.D. became Sam's legal sibling when she voluntarily agreed to surrender her parental rights to Sam's maternal grandmother. If so, she can pursue her rights as a sibling under N.J.S.A. 9:2-7.1(a).

We hold that to recognize K.D. as the legal sibling of her biological son under these circumstances would violate the public policy underpinning the

Division's role under Title 30. We are also satisfied that the Legislature did not intend to sanction such an outcome when it adopted N.J.S.A. 9:2-7.1.

N.J.S.A. 30:4C-15.1(a) allows a court to permanently sever the legal relationship between a parent and child only after the court comes to the consequential decision that a child's welfare has been or will continue to be endangered by the parental relationship and "proof of parental unfitness is clear." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 447 (2012); see In re Adoption of Child by J.E.V., 442 N.J. Super. 472, 481 (App. Div. 2015) (confirming that "[a]fter the elimination of the death penalty, we can think of no legal consequence of greater magnitude than the termination of parental rights.").

Here, K.D.'s decision to enter a voluntary surrender of her parental rights to her biological son in favor of the child's maternal grandmother permanently and irrevocably severed all of her legally cognizable familial rights to her son. Thus, K.D. does not fall within the class of litigants empowered to bring a summary action under N.J.S.A. 9:2-7.1. Stated differently, K.D. does not have standing to bring a visitation action in the Family Part under N.J.S.A. 9:2-7.1 because she is not her biological son's legal sibling. As we have acknowledged, "[a]n adoptive family must be given the right to grow and develop as an autonomous family, and must not be tied to the very relationship

that put the child in the position of being adopted." In re Adoption of a Child by W.P., 163 N.J. 158, 175 (2000). A contrary ruling would consign adoptive parents to an inferior status. Ibid.; see Mimkon v. Ford, 66 N.J. 426, 441 (1975) (Clifford, J., dissenting).

Next, we acknowledge that an adoptive parent may voluntarily permit a child to maintain contact with a biological parent. See In re Guardianship of D.M.H., 161 N.J. 365 (1999). However, as the motion judge recognized, granting K.D. legal standing to bring a visitation action as a biological parent would create the functional equivalent of an open adoption. Our Supreme Court has made clear that the subject of open adoptions "represents a significant policy issue which should be addressed in separate legislation." In re Adoption of a Child by D.M.H., 135 N.J. 473, 494 (1994) (quoting Senate Judiciary Committee, Statement to Senate, Bill No. 685 (1993)).

Accordingly, unless otherwise decided by the Legislature, the judiciary has no authority to compel A.S. to permit contact between K.D. and Sam based on K.D.'s biological connection to Sam or her identified surrender to Sam's maternal grandparent. For the sake of completeness, we also find no basis to disturb either the motion judge's determination that K.D. does not meet the criteria to be considered Sam's psychological parent or his decision that no evidentiary hearing was required.

Finally, K.D. contends the Family Part judge erred in granting the Division amicus status and improperly relied on the Division's factual assertions. Again, we disagree.

Rule 1:13-9 provides that a court "shall grant the motion [for leave to appear as amicus curiae] if it is satisfied under all the circumstances that the motion is timely, the applicant's participation will assist in the resolution of an issue of public importance, and no party to the litigation will be unduly prejudiced thereby." The order must then define the permitted extent of participation of amicus. Ibid.

The Division's "statutory mission is to protect the health and welfare of the children of this state." N.J. Div. of Youth & Fam. Servs. v. E.B., 137 N.J. 180, 184 (1994) (citing N.J.S.A. 30:4C-4). "Traditionally, the role of amicus curiae was to be advisory rather than adverse." In re State ex rel. Essex Cty. Prosecutor's Off., 427 N.J. Super. 1, 5 (Law Div. 2012) (citing Casey v. Male, 63 N.J. Super. 255, 258 (Cty. Ct. 1960)). However, the Third Circuit held that amicus need not be impartial, and that even when parties are very well represented, amicus "may provide important assistance to the court." Neonatology Assocs., P.A. v. Comm'r, 293 F.3d 128, 132 (3d Cir. 2002). Further, "Rule 1:13-9 has been interpreted as establishing 'a liberal standard for permitting amicus appearances.'" In re State ex rel. Essex Cty. Prosecutor's

Off., 427 N.J. Super. at 5 (quoting Pfizer, Inc. v. Dir., Div. of Tax'n, 23 N.J. Tax 421, 424 (Tax 2007)).

Here, the judge determined the Division could participate as amicus but specified its participation was limited to "the issue of post[-]adoption visitation by a third party, inclusive of any collateral issue raised by the parties." We are satisfied he did not abuse his discretion in this regard, particularly given the Division's involvement with Sam from 2009 onward. While the Division's position was adverse to K.D.'s post-adoption application, this lone fact did not preclude the Division's involvement as amicus.

Family courts have special expertise in family matters and "appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). "Therefore, an appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Id. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs. Ins. Co., 65 N.J. 474, 484 (1974)) (alteration in original). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995) (citations omitted).

Governed by these standards, we are satisfied the record amply supports the motion judge's factual findings. Considering those findings, as well as the legal principles we have highlighted, we perceive no basis to disturb the judge's decision to deny K.D. post-adoption visits without the necessity of an evidentiary hearing.

To the extent we have not addressed K.D.'s remaining arguments, we find them lacking in merit. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3543-18T4